| | | |
|---|---|---|
| THOMAS REID, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| TOWN OF DALLAS AND | ) | |
| STEVEN SCARBOROUGH, IN HIS | ) | |
| OFFICIAL AND INDIVIDUAL | ) | |
| CAPACITY, | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on "Defendants' Motion to Dismiss Plaintiff's Complaint in Lieu of an Answer" (the "Motion") (Doc. No. 14) and the parties' briefs and exhibits. (Doc. Nos. 15-18).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for the Court's consideration.

For the reasons set forth below, the undersigned respectfully recommends that Defendants' Motion to Dismiss be granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Accepting the factual allegations of Plaintiff's First Amended Complaint as true for purposes of reviewing the Motion, Plaintiff Thomas Reid ("Plaintiff") is an independent journalist who records and later posts events or incidents that occur in public places on the internet.  (Doc. No. 13 ¶ 4).  In September 2021, Plaintiff was at the scene of a vehicular accident that took place on a public road in the Town of Dallas (the "Town" or "Dallas"), near the entrance of a parking lot.  Id. ¶ 5.  After the accident, Plaintiff walked and filmed around the accident on the public

sidewalk and the nearby parking lot for "around twenty minutes," and at one point greeted and spoke with an officer.  Id. ¶¶ 6-7.

While standing in the parking lot, Earl Hoyle Withers Jr. ("Withers"), a member of the Dallas Rescue Squad and Board of Aldermen for the Town, approached and informed Plaintiff that a woman did not want Plaintiff taking a picture of her car.  Id. ¶¶ 8-12, 48, 55.  At the time of Withers' request, Plaintiff was further away from the accident scene than the majority of the time he was filming, and no law enforcement officer was within Plaintiff's camera view or interacting with Plaintiff.  Id. ¶¶ 12-13.  Plaintiff acknowledged but declined Withers' request, and showed Withers his credentials.  Id. ¶ 14.

An unknown person (referred to hereafter as "John Doe"), whom Plaintiff believes worked for the Dallas Fire Department or Dallas Rescue Squad, also approached Plaintiff and told him to "back up."  Id. at ¶¶ 16, 55.  John Doe also retrieved Officer Scarborough ("Officer Scarborough"), a police officer for the Dallas Police Department, to "confront" Plaintiff.  Id. at ¶¶ 17, 53.  Plaintiff was surrounded by Withers, John Doe, and another unknown person.  Id. ¶ 18.  They were demanding Plaintiff to back up further.  Id.  While surrounded, Officer Scarborough ordered Plaintiff "to step over here" at the same time that Withers and John Doe were "talking at him."  Id. ¶¶ 19, 22.  Plaintiff contends Officer Scarborough "assaulted" him by reaching toward Plaintiff to touch him, but Plaintiff told Officer Scarborough not to touch him.  Id. ¶¶ 19, 100-101.

Plaintiff asked Officer Scarborough for six feet of space and also asked if he was being detained.  Id. ¶¶ 23.  Officer Scarborough again ordered Plaintiff to "step over here," and Plaintiff asked whether that request was "a lawful order."  Id. ¶ 24.  Officer Scarborough then "touched [Plaintiff] against his consent to arrest him and placed [Plaintiff] in handcuffs," told him he was being detained, placed him in a police vehicle, and later transported Plaintiff to the Gaston County

jail. Id. ¶¶ 25-26, 102-103. Plaintiff was charged with resisting public officer in violation of N.C. Gen. Stat. § 14-223, in Gaston County case number 21 CR 58827 (the "State Charge"). Id. ¶ 27. Officer Scarborough later testified against Plaintiff on the State Charge, and Plaintiff was ultimately found not guilty of the State Charge after multiple court dates. Id. at ¶¶ 34-35, 77.

According to Plaintiff, during this incident he was not under suspicion of any criminal activity. Id. ¶ 20. Plaintiff contends that at no point did any police officer approach him before the interaction that led to his arrest. Id. ¶¶ 30, 64-66. A state Magistrate's Order, attached to the Amended Complaint, found "probable cause to believe that [Plaintiff] . . . [refused] multiple commands by officers and emergency personnel to leave the scene of an accident, thus creating delays in investigating the accident . . . with serious injuries." (Doc. No. 16). Plaintiff alleges, however, that neither Officer Scarborough nor emergency personnel ordered him to leave the scene of the accident. (Doc. No. 13 ¶¶ 21, 31-33, 64-67). Thus, Plaintiff asserts that his arrest and the State Charge were without probable cause. Id. ¶ 28.

On February 15, 2023, Plaintiff filed this action in Gaston County Superior Court. (Doc. No. 1-1). On March 9, 2023, Defendants removed the action to this Court. (Doc. No. 1). Plaintiff filed his First Amended Complaint on September 26, 2023 (hereinafter referred to as the "Complaint"). (Doc. No. 13). Plaintiff's Complaint brings various federal and state claims against Officer Scarborough and the Town of Dallas. Defendants now move to dismiss the Complaint. (Doc. No. 14).

## II.    STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiffs' "[f]actual allegations must be

enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief,'" and therefore should be dismissed. <u>Id.</u> (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989). Where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." <u>Id.</u> at 327 (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

## III.    DISCUSSION

### A.  Section 1983 Claims

Under 42 U.S.C. § 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>Mauler v. Arlotto</u>, 777 Fed. App'x 59, 60 (4th Cir. 2019) (per curiam).

However, "[w]hen a government official is sued in their individual capacity, qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Sharpe v. Winterville Police Dep't</u>, 59 F.4th 674, 682-83 (4th Cir. 2023) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)). Thus, "[a]n officer is entitled to qualified immunity unless he (1) 'violated a federal

statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time.'" Hulbert v. Pope, 70 F.4th 726, 732 (4th Cir. 2023) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)). "A right can be clearly established by cases of controlling authority in this jurisdiction or by a consensus of persuasive authority from other jurisdictions." Sharpe, 59 F.4th at 683 (citing Owens ex rel. Owens v. Lott, 372 F.3d 267, 280 (4th Cir. 2004)). "Either way, these sources 'must have placed the statutory or constitutional question beyond debate.'" Id. (quoting Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018)). The right must be "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Cannon v. Vill. of Bald Head Island, 891 F.3d 489, 497 (4th Cir. 2018)). In considering qualified immunity, "the nature of the right allegedly violated must be defined at a high level of particularity." Occupy Columbia v. Haley, 738 F.3d 107, 121 (4th Cir. 2013) (quoting Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001)) (internal quotation marks omitted).

### 1. Section 1983 First Amendment

As an initial matter, while Plaintiff's response to the Motion discusses in detail an alleged First Amendment claim, the Court has thoroughly reviewed Plaintiff's Complaint and no such claim is included in the Plaintiff's Complaint. Those claims enumerated in the Compliant were the following: (1) federal and state malicious prosecution claims; (2) negligence per se; (3) federal and state false arrest, false imprisonment, assault, and battery; (4) direct claims under the North Carolina Constitution; (5) allegations asserting Town liability; and (6) a demand for punitive damages. Even a liberal read of the Complaint does not show a First Amendment claim was pled. In fact, Plaintiff's Complaint refers to the First Amendment only once, and only then in the first introductory paragraph. (Doc. No. 13 ¶ 1). The only reference to freedom of speech in is the context of his North Carolina Constitutional law claim, and cites to the North Carolina

Constitution. Id. ¶¶ 3, 110-116. Plaintiff is the master of his own Complaint. Steves & Sons, Inc. v. JELD-WEN, Inc., 988 F.3d 690, 728 (4th Cir. 2021) ("[T]he civil plaintiff is the 'master of his complaint' and 'determines the claims . . . to bring.'" (quoting United States ex rel. Bunk v. Gosselin World Wide Moving, N.V., 741 F.3d 390, 405–06 (4th Cir. 2013) (alterations in original)). The Court may not consider allegations made outside of Plaintiff's Complaint or an amended complaint. McNulty v. Commc'ns Workers of Am., No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 (W.D.N.C. Mar. 16, 2012) ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)." (citing Beck v. City of Durham, 129 F. Supp. 844, 855 (M.D.N.C. 2000))). Plaintiff has filed an Amended Complaint and did not plead a First Amendment claim. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's First Amendment claim be granted.

### 2. Section 1983 Fourth Amendment

Next, Plaintiff asserts Fourth Amendment claims under the theories of false arrest, malicious prosecution, and excessive force.

#### a. False Arrest and Malicious Prosecution

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Arrests are seizures of persons, and as such must be reasonable under the circumstances. District of Columbia v. Wesby, 583 U.S. 48, 56 (2018) (citing Payton v. New York, 445 U.S. 573, 585 (1980)). "The Supreme Court has stated unequivocally that '[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.'" Pegg v. Herrnberger, 845

F.3d 112, 118 (4th Cir. 2017) (quoting Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)). On the other hand, "[a] seizure is unreasonable under the Fourth Amendment if it is not based on probable cause." Hupp v. Cook, 931 F.3d 307, 318 (4th Cir. 2019) (quoting Dunaway v. New York, 442 U.S. 200, 213 (1979)). Thus, for a § 1983 claim under a theory of false arrest, a plaintiff must plead that he was arrested without probable cause. English v. Clarke, 90 F.4th 636, 646 (4th Cir. 2024) (quoting Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014)).

"A malicious prosecution claim under § 1983, like a false arrest claim, is properly understood as a Fourth Amendment claim for unreasonable seizure." English, 90 F.4th at 647 (quoting Evans, 703 F.3d at 647); Thompson v. Clark, 596 U.S. 36, 42-49 (2022) (recognizing Fourth Amendment malicious prosecution claim). To state a malicious prosecution claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. English, 90 F.4th at 647; Hupp, 931 F.3d at 324. "Warrants and indictments usually 'conclusively determine[ ] the existence of probable cause.'" However, this determination may be impacted if "an officer 'deliberately supplied [material] misleading information that influenced the [judge's or grand jury's] decision.'" English, 90 F.4th at 648 (quoting Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012)); Hupp, 931 F.3d at 324 (citing Manuel v. City of Joliet, Ill., 580 U.S. 357, 367 (2017)); English, 90 F.4th at 648; Sowers v. City of Charlotte, 659 Fed. App'x 738, 739-40 (4th Cir. 2016) ("Therefore, the question of whether Appellees violated Sowers' constitutional rights depends on whether they had probable cause to arrest him at the time of his arrest."); Wesby, 583 U.S. at 5-57 (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

Determining probable cause "deals with probabilities and depends on the totality of the circumstances," and "requires only a probability or substantial chance of criminal activity, not an

actual showing of such activity." Id. (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983). Probable cause is "is not a high bar." Id. (quoting Kaley v. United States, 571 U.S. 320, 338 (2014). Indeed, evidence to secure a conviction is not required, and a later acquittal does not vitiate an earlier probable cause determination. Hupp, 931 F.3d at 318; Main v. Wingler, No. 5:22-CV-00157-KDB-DCK, 2024 WL 871384, at *5 (W.D.N.C. Feb. 29, 2024); McConnell v. Watauga Cnty., No. 5:17-cv-195-MOC-DCK, 2019 WL 2344223, at *4 (W.D.N.C. May 31, 2019). For purposes of considering qualified immunity, "the issue is not whether probable cause actually exists but whether a reasonable officer in the officer's position would have believed he had probable cause to arrest." Sowers, 659 Fed. App'x at 740. The question then is "whether arguable probable cause existed." McConnell, 2019 WL 2344223, at *7 (emphasis in original).

The probable cause analysis is governed by two factors: (1) the suspect's conduct as known to the officer, and (2) the "contours of the offense thought to be committed by that conduct." Brown v. Gilmore, 278 F.3d 362, 368 (4th Cir. 2002) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992)); Hupp, 931 F.3d at 318. As such, probable cause "could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both." Brown, 278 F.3d at 368 (quoting Pritchett, 973 F.2d at 314). "Determining whether the information surrounding an arrest suffices to establish probable cause is an individualized and fact-specific inquiry." Wadkins v. Arnold, 214 F.3d 535, 539 (4th Cir. 2000).

Because the probable cause inquiry is informed by the "contours of the offense" at issue, the Court must be guided by the statute under which Plaintiff was arrested. Under N.C. Gen. Stat. § 14-223, "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge an official duty, the person is guilty of a Class 2

misdemeanor." N.C. Gen. Stat. § 14–223. "The elements of the offense are: 1) that the victim was a public officer; 2) that the arrestee knew that the victim was a public officer; 3) that the victim was discharging or attempting to discharge a duty of his office; 4) that the arrestee resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and 5) that the arrestee acted willfully and unlawfully." Sowers, 659 Fed. App'x at 740 (citing North Carolina v. Sinclair, 663 S.E.2d 866, 870 (N.C. Ct. App. 2008)). "The general rule is that merely remonstrating with an officer . . . or criticizing or questioning an officer while he is performing his duty, when done in an orderly manner, does not amount to obstructing or delaying an officer in the performance of his duties." Id. (quoting North Carolina v. Leigh, 179 S.E.2d 708, 713 (N.C. 1971)). "Only those communications intended to hinder or prevent an officer from carrying out his duty are discouraged by" the statute. Id. (quoting Burton v. City of Durham, 457 S.E.2d 329, 332 (N.C. Ct. App. 1995)). "Communications simply intended to assert rights, seek clarification or obtain information in a peaceful way are not chilled by section 14-223." Burton v. City of Durham, 457 S.E.2d 329, 332 (N.C. Ct. App. 1995) (citing State v. Singletary, 327 S.E.2d 11, 13 (N.C. Ct. App. 1985)).

Here, in short, Plaintiff's Complaint alleges that Officer Scarborough arrested and charged him with violating N.C. Gen. Stat. § 14-223, which Plaintiff alleges was without probable cause because Plaintiff declined to stop filming the accident scene in a public area and in public view and sought clarification or more information from Officer Scarborough about his requests for Plaintiff to move back. In addition, Plaintiff alleges that Officer Scarborough later testified against him on the State Charge, provided false information as noted in Exhibit 1, and Plaintiff was ultimately found not guilty. Id. at ¶¶ 34-35, 77. While these factual allegations state claims for false arrest and malicious prosecution under the Fourth Amendment, Defendants argue Officer

Scarborough is entitled to qualified immunity. Defendants contend that Officer Scarborough did not violate Plaintiff's constitutional rights because a reasonable officer would have believed he had probable cause to arrest Plaintiff for resisting a public officer under N.C. Gen. Stat. § 14-223. However, there are facts in dispute about what actually transpired.

More specifically, Plaintiff alleges the Officer did not have probable cause, and the underlying probable cause finding was based on fraudulent statements. Plaintiff's Complaint alleges that contrary to "false allegations," Plaintiff was never ordered to leave the scene of the accident by anybody, including officers and emergency personnel. (Doc. No. 13 ¶¶ 63-66). Defendants, on the other hand, maintain Plaintiff "[r]efus[ed] multiple commands by officers and emergency personnel to leave the scene of an accident," and "thus create[ed] delays in investigating the accident . . . [while] investigating an accident with serious injuries." (Doc. No. 16); Hupp, 931 F.3d at 324-25 (reversing district court's finding of qualified immunity where criminal complaint on which magistrate relied in finding probable cause was based on disputed facts plaintiff claimed were false). Defendants' arguments demonstrate precisely why the Court is not able to rule on qualified immunity at this early motion to dismiss stage.[1] Defendants assert that Officer Scarborough "had direct eyewitness information that Plaintiff was being disruptive to individuals attending to the automobile accident," that the accident scene was "chaotic," and that Plaintiff was "confrontational." (Doc. No. 18 at 3). Plaintiff tells a different story. Instead, the facts in the Complaint indicate that Plaintiff had been filming for some time before his interaction with Withers and Officer Scarborough. (Doc. No. 13 ¶ 6). He contends that he greeted and spoke with another Town police officer during the twenty minutes he was filming prior to the interaction, and had previously been filming closer to the scene of the accident than when he was arrested

---

[1] Both parties rely on Sharpe, 59 F.4th 674 (4th Cir. 2023). Sharpe dealt largely with First Amendment issues and involved livestreaming law enforcement in considering a Motion for Judgment on the Pleadings.

without interfering with the investigation of the accident.  Id. ¶¶ 6-7, 12.  It was not until after Plaintiff declined Withers' request to stop filming that Plaintiff was allegedly "surrounded" by law enforcement and/or emergency personnel who were "talking at him," while he was also being asked to "step over here" or move back.  Id. ¶¶ 18-25.  Plaintiff was allegedly arrested after seeking clarification about the interaction, his rights, and Officer Scarborough's request.  Id.

The Court cannot decide at this stage which version of the facts is accurate.  Additional development is needed before the Court can rule as a matter of law whether a reasonable officer would believe that probable cause existed to arrest Plaintiff under N.C. Gen. Stat. § 14-223.  For these reasons, the Court is unable to determine whether constitutional violations occurred and whether such alleged violations were clearly established.  Hupp, 931 F.3d at 320 (finding questions of fact existed on Fourth Amendment false arrest claim as to whether plaintiff failed to comply with officer's order to step aside and noting "[c]learly, there is a dispute as to whether Hupp refused to comply with Trooper Cook's orders or was even given the opportunity to comply with them before she was arrested mere seconds later"); Adams v. City of Graham, No. 1:22CV906, 2024 WL 888732, at *5-6 (M.D.N.C. Feb. 28, 2024) (recommending denial of motion to dismiss Fourth Amendment claim without prejudice to be raised again at summary judgment and noting "Defendant asks the Court to make factual determinations at odds with what is pleaded in the Complaint in order to conclude that he had probable cause to believe that disorderly conduct was occurring or about to occur").  Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's Fourth Amendment false arrest claim be denied without prejudice to be re-raised at a later stage as appropriate.  For the sake of clarity, the undersigned does not conclude whether probable cause existed nor does the undersigned conclude whether Officer Scarborough is or is not entitled to qualified immunity on this claim.

*b. Excessive Force*

"The Fourth Amendment prohibits police officers from 'using excessive force to seize a free citizen.'" <u>Hupp</u>, 931 F.3d at 321. "Rather, police officers are constitutionally permitted to use only that force which is reasonable under the circumstances." <u>Id.</u> In considering excessive force, courts ask 'whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force.'" <u>Id.</u> at 321-22 (quoting <u>Elliott v. Leavitt</u>, 99 F.3d 640, 642 (4th Cir. 1996)). "In determining whether excessive force was used, we consider the facts 'from the perspective of a reasonable officer on the scene,' without the '20/20 vision of hindsight,'" and without considering the officer's intent or motivation. <u>Id.</u> (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)). "That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." <u>Cnty. Of Los Angeles, Calif. v. Mendez</u>, 581 U.S. 420, 428 (2017).

The inquiry "is guided by the framework of <u>Graham v. Connor</u>, 490 U.S. 386 (1989)." <u>Nazario v. Gutierrez</u>, --- F.4th ----2024 WL 2787963, at *14 (4th Cir. May 31, 2024). Under <u>Graham</u>, "there are three factors central to the inquiry: 'the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.'" <u>Id.</u> (quoting <u>Graham</u>, 490 U.S. at 396). In the Fourth Circuit, courts also consider a fourth factor, "'the extent of the plaintiff's injuries.'" <u>Id.</u> (quoting <u>Hupp</u>, 931 F.3d at 322)).

"[T]he objective reasonableness analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional." <u>Mendez</u>, 581 U.S. at 428. While courts may consider the lack of probable cause for an arrest when evaluating the reasonableness of force used, the use of any force is not necessarily unconstitutional solely because an arrest was allegedly

unlawful. Hupp, 931 F.3d at 322. In other words, evaluating excessive force claims does not turn entirely on an alleged lack of probable cause; instead, "we evaluate the totality of the circumstances surrounding the use of force." Id. "Ultimately, the question to be decided is 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)) (alterations in original).

Defendants argue Officer Scarborough is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim. The undersigned agrees.

The Complaint alleges that Officer Scarborough "touched Reid against his consent to arrest him and placed him in handcuffs" and that Officer Scarborough "arrested and seized Reid by force" against his will. (Doc. No. 13 ¶¶ 102-105). Notably here, the Complaint does not allege such force was "excessive" and in fact the word "excessive" does not appear in the Complaint.[2] Nor does the Complaint provide any details as to the alleged force used other than merely placing Plaintiff in handcuffs against his will. Further, Plaintiff's Complaint does not allege any injuries that occurred as a result of such alleged force. In fact, the only force and injury Plaintiff alleges is the alleged false arrest itself – for which Plaintiff brings a separate Fourth Amendment claim for false arrest. False arrest and excessive force are two separate claims and must be independently analyzed. Mendez, 581 U.S. at 428 (noting that "[a]n excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances."); Null v. Garcia, No. 4:23-CV-00179-RK, 2023 WL 9421588, at *7-8 (W.D. Mo. Dec. 27, 2023) ("Plaintiff's argument appears to be that Detective Garcia used excessive force merely by handcuffing him (a de minimis use of force) because of the lack of probable cause to detain or arrest him. This excessive-force theory improperly conflates what is

---

[2] The Court observes, however, the word "excess" appears in the Complaint related to claims for damages (i.e., in excess of $25,000). (Doc. No. 13 ¶¶ 81, 109, 137, Prayer for Relief ¶ 1).

an independent Fourth Amendment claim for excessive force (to address the unreasonable use of force in effectuating an arrest/seizure of a person) with a Fourth Amendment claim for unlawful arrest or detention (to address an unreasonable arrest/seizure without probable cause or reasonable suspicion, as applicable).").

Taking these factual allegations in the Complaint as true, the undersigned concludes that Plaintiff's Complaint fails to sufficiently allege Officer Scarborough violated the Fourth Amendment by using excessive force. Hulbert v. Pope, 70 F.4th at 732.

Even if the Complaint sufficiently alleged the force used was excessive, the claim still fails based on these facts. Brissett v. Paul, 141 F.3d 1157 (4th Cir. 1998) (Table) (affirming district court's decision that officer did not use excessive force where plaintiff did not offer evidence that he sustained any physical injury from being handcuffed and arms being held in painful position); Brown v. Gilmore, 278 F.3d 362, 369 (4th Cir. 2002) ("And, in all events, a standard procedure such as handcuffing would rarely constitute excessive force."); Humphreys v. Rowan-Salisbury Bd. Of Educ., No. 1:21-cv-432, 2023 WL 2692433, at *7 (M.D.N.C. Mar. 29, 2023) ("Plaintiff does not allege that any additional force was used other than what was necessary to place her in handcuffs. Therefore, this court finds that in the circumstances present here, placing Plaintiff in handcuffs was reasonably necessary to accomplish the arrest and did not constitute excessive force."); Henderson v. McClain, No. 20-2197, 2022 WL 704353, at *5 (4th Cir. Mar. 9, 2022) (per curiam) ("As the district court acknowledged, this court has held that the use of handcuffs rarely constitutes excessive force where the officer has probable cause for the underlying arrest."); Hupp, 931 F.3d at 322 (rejecting argument that any use of force is necessarily unconstitutional where

probable cause is lacking); <u>E.W. ex rel. T.W. v. Dolgos</u>, 884 F.3d 172, 185-87 (4th Cir. 2018).[3]

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's Fourth Amendment excessive force claim be <u>granted</u>.

### 3. Section 1983 Claims Against the Town of Dallas

"Municipalities are 'persons' within the meaning of § 1983." <u>Franklin v. City of Charlotte</u>, 64 F.4th 519, 535 (4th Cir. 2023) (quoting <u>Monell v. Dep't of Soc. Servs. of N.Y.C.</u>, 436 U.S. 658, 690 (1978)). Thus, a suit may be brought against a municipality for a federal constitutional deprivation "when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" <u>Starbuck v. Williamsburg James Cnty. Sch. Bd.</u>, 28 F.4th 529, 532-33 (4th Cir. 2022) (quoting <u>Monell</u>, 436 U.S. at 690-91). <u>Monell</u> liability under § 1983 cannot be predicated upon a <u>respondeat</u> <u>superior</u> theory. <u>Franklin</u>, 64 F.4th at 535. "Liability arises only when the offensive acts are taken in furtherance of municipal policy or custom." <u>Jones v. McComas</u>, No. 1:23-cv-215-KDB, 2023 WL 7174240, at *2 (W.D.N.C. Oct. 31, 2023).

There are three elements for <u>Monell</u> liability. <u>Id.</u> "First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee 'taken in furtherance of some municipal policy or custom.'" <u>Id.</u> (quoting <u>Milligan v. City of Newport News</u>, 743 F.2d 227, 229 (4th Cir. 1984)). "Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality." <u>Jones</u>, 2023 WL 7174240, at *2; <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1389 (4th Cir. 1987). "Third, the plaintiff must allege an affirmative causal link

---

[3] Plaintiff cites to <u>Glenn-Robinson v. Acker</u> and <u>Nolin v. Isbell</u>, for the proposition that any use of force is unreasonable if there is not probable cause. <u>Glenn-Robinson</u>, 538 S.E.2d 601 (N.C. Ct. App. 2000); <u>Nolin</u>, 207 F.3d 1253 (11th Cir. 2000). However, <u>Glenn-Robinson</u>, cited to <u>Nolin</u>, not the Fourth Circuit, on the issue of the use of force without probable cause. The court in <u>Nolin</u> held that the application of de minimis force, without more, will not support a claim for excessive force, and in dicta the court noted earlier Eleventh Circuit cases that involved arrests without probable cause. These cases were decided before <u>Mendez</u>, where the Supreme Court explained that the Fourth Amendment analysis must be conducted separately for each search or seizure that is alleged to be unconstitutional and <u>Hupp</u> where the Fourth Circuit explained that a lack of probable cause is not solely determinative of an excessive force claim. <u>Mendez</u>, 581 U.S. at 428; <u>Hupp</u>, 931 F.3d at 322.

between the policy or custom, and the particular injury suffered by the plaintiff." Jones, 2023 WL 7174240, at *2; Franklin, 64 F.4th at 536-37.

With respect to the first element,

> [A] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Starbuck, 28 F.4th at 533 (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)).

"The question of who possesses final policymaking authority is one of state law." Riddick v. Sch. Bd. Of City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000). "[I]n assessing whether a municipality may be held liable for the constitutional or statutory violations of their decisionmakers, the touchstone inquiry is whether 'the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.'" Hunter v. Town of Mocksville, 897 F.3d 538, 554-55 (4th Cir. 2018) (quoting Liverman v. City of Petersburg, 844 F.3d 400, 413 (4th Cir. 2016)). "If so, the decisionmaker's actions may fairly be attributed as reflecting municipal policy." Id. at 555.

Where a plaintiff alleges a municipal policy or custom by failure to train, the plaintiff must plead that "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." Caraway v. City of Pineville, No.3:21-cv-00454, 2022 WL 16700687, at *15 (W.D.N.C. Nov. 3, 2022) (quoting Gallimore v. Henrico Cnty. Sch. Bd., 38 F. Supp. 3d 721, 726 (E.D. Va. Aug. 5, 2014)). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011) (quoting <u>Bd. Of Cnty. Comm'rs of Bryan Cnty Okla. v. Brown</u>, 520 U.S. 397, 410 (1997)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." <u>Id.</u> at 61-62; <u>Spell</u>, 824 F.2d at 1390 ("[T]raining policy deficiencies for which municipal liability may be imposed include not only express authorizations of specific unconstitutional conduct, but tacit authorizations, and failures adequately to prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty.").

"No matter which of these paths [to show a policy or custom that] a plaintiff takes, the 'official policy' itself must 'inflict' the alleged injury for the municipality to be liable under § 1983." <u>Franklin</u>, 64 F.4th at 536 (quoting <u>Monell</u>, 436 U.S. at 694) (alterations in original omitted). Where there is no constitutional violation by an individual officer there can be no municipality liability under § 1983. <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); <u>Ryu v. Whitten</u>, 684 Fed. App'x 308, 311 (4th Cir. 2017) ("Accordingly, because there was no Fourth Amendment violation, both Ryu's Fourth Amendment claim against Whitten in his individual capacity and his <u>Monell</u> claim against Warren County fail.").

As discussed above, the undersigned concludes that Plaintiff's Complaint fails to sufficiently allege violations of the First Amendment and the Fourth Amendment by using excessive force. Therefore, any claims against the Town based on the First Amendment and the

Fourth Amendment excessive force must be dismissed.

As to Plaintiff's remaining constitutional claims, Plaintiff's Complaint points to an express policy stating: "No person shall willfully fail, or refuse, to comply with any lawful orders or direction by a police officer." (Doc. No. 13 ¶ 125). Plaintiff alleges that the Town failed to properly train its employees on enforcing the policy in a manner that does not violate the Fourth Amendment and also on making warrantless arrests, filming police, and resisting officer, as well as ratification of alleged violations by Withers. However, Plaintiff's Complaint fails to provide any specific, rather than conclusory allegations, as to training or other deficiencies. It also does not otherwise point to any pattern of prior similar instances or any other actual or constructive notice demonstrating a pattern of constitutional violations while enforcing the policy. Moreover, as to all theories of Town policy, Plaintiff's Complaint hinges on facts related to a single incident without any particulars on the any pattern, training program, facts supporting deliberate indifference, or a final policymaker. Scearce v. Pittsylvania Cnty. Bd. Of Supervisors, No. 4:23-cv-00012, 2023 WL 6121129, at *9 (W.D. Va. Sept. 19, 2023) ("[T]he Board as a whole has the power to make final policy; individual members—even its chair—do not."). Thus, Plaintiff's Complaint fails to state a claim against the Town under the Fourth Amendment.

For these reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's Monell claims against the Town be granted.

### B. State Law Claims

Plaintiff also brings several state law claims against Defendants. Defendants argue that Officer Scarborough is entitled to public official immunity and that the Town is entitled to governmental immunity on all state law claims.

1. <u>Officer Scarborough - Public Official Immunity</u>

Public official immunity "precludes suit against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" <u>R.A. v Johnson</u>, 36 F.4th 537, 542 (4th Cir. 2022) (quoting <u>Hart v. Brienza</u>, 784 S.E.2d 211, 215 (N.C. Ct. App. 2016)); <u>see also</u> <u>Mitchell v. Pruden</u>, 796 S.E.2d 77, 82 (N.C. Ct. App. 2017) (quoting <u>Fullwood v. Barnes</u>, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016)). "North Carolina courts have found police officers engaged in performance of their duties are public officials entitled to public official immunity." <u>Morgan v. City of Charlotte</u>, No. 3:22-CV-00003-KDB-DCK, 2023 WL 4002524, at * (W.D.N.C. June 14, 2023) (citing <u>Campbell v. Anderson</u>, 576 S.E.2d 726, 729-30 (N.C. Ct. App. 2003)). To sufficiently state a claim in cases where immunity presumptively applies, the plaintiff must adequately plead one of these exceptions in the complaint. <u>R.A.</u>, 36 F.4th at 544.

A "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." <u>Grad v. Kaasa</u>, 321 S.E.2d 888, 890 (N.C. 1984). "Thus elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." <u>Wilcox v. City of Asheville</u>, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012). "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." <u>Bartley v. City of High Point</u>, 873 S.E.2d 525, 534 (N.C. 2022). "Gross violations of generally accepted police practice and custom contributes to the finding that officers acted contrary to their duty." <u>Id.</u> The third element, intent to injure, "can either be 'actual' or 'constructive.'" <u>Knibbs v. Momphard</u>, 30 F.4th 200, 227 (4th Cir. 2022)

(quoting Wilcox, 730 S.E.2d at 231). However, "a showing of mere reckless indifference is insufficient'" to show a constructive intent to injure. Wilcox, 730 S.E.2d at 232; see also Schlossberg v. Goins, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000) ("A Plaintiff may not satisfy [showing malice or corruption] through allegations of mere reckless indifference."). "To amount to constructive intent, 'a plaintiff must show that the defendant's actions were so recklessly or manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" R.A., 36 F.4th at 545-46 (quoting Wilcox, 730 S.E.2d at 232). "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' so evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'" Knibbs, 30 F.4th at 227 (quoting Doe v. City of Charlotte, 848 S.E.2d 1, 12 (N.C. Ct. App. 2020)).

To sufficiently allege corruption that pierces public official immunity, a plaintiff must establish that a public official "acted for his own benefit." Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022). "An act is corrupt when it is done with 'a wrongful design to acquire some pecuniary profit or other advantage.'" Green v. Howell, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (quoting State v. Hair, 442 S.E.2d 163, 165 (N.C. Ct. App. 1994)). The Supreme Court of North Carolina has held "[t]he simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption." Grad, 321 S.E.2d at 891-92.

As an initial matter, Plaintiff fails to plead that Officer Scarborough acted with malice, corruption, or outside the scope of his official authority for any state law claims except his malicious prosecution claim. Plaintiff's Complaint does not allege corrupt or corruption a single time. Further, the Complaint alleges that the acts underlying Plaintiff's injuries occurred within

the scope of his official authority and carrying out his duties. The only references to malice or malicious throughout the Complaint only involve Plaintiff's malicious prosecution claim. For this reason, Plaintiff failed to state a claim plausible on its face against Officer Scarborough to overcome public official immunity with respect to the state law claims except malicious prosecution. R.A., 36 F.4th at 545 ("R.A. did not allege malice, or any other piercing exception, in the amended complaint. Therefore, she has not satisfied the basic burden to state a claim to relief that is plausible on its face. This pleading standard is not a mere formality. It is especially important when immunity is at stake." (quoting Twombly, 550 U.S. at 570) (internal citation and quotations marks omitted)). Plaintiff must meet the minimum pleading requirements and factual allegations to support such claims, including and importantly the exceptions to the public official immunity where applicable.[4]

Plaintiff did, however, sufficiently plead a state law malicious prosecution claim, including an immunity piercing exception. Under North Carolina law, a plaintiff bringing a malicious prosecution claim must show that the defendant "(1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended

---

[4] In addition, with respect to Plaintiff's negligence, assault, and battery claims, as already detailed in the Court's excessive force analysis, Plaintiff's Complaint fails to allege that any force used against Plaintiff was excessive or that he was injured in any way. The facts alleged in Plaintiff's Complaint are in stark contrast to the cases finding malice. For example, in Bartley, the North Carolina Supreme Court concluded that questions of material fact existed as to whether a police officer acted with malice "by body slamming" the plaintiff against the trunk of his car and "tightly handcuffing him without justification." 873 S.E.2d at 534-35. Plaintiff's Complaint does not allege any use of force other than merely placing Plaintiff in handcuffs and does not allege such handcuffs were too tight or otherwise injured Plaintiff. Given the facts alleged in the Complaint, the undersigned concludes that Officer Scarborough is entitled to public official immunity on Plaintiff's assault and battery claims. Moreover, "[i]n excessive force cases, a 'parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well' (or does not) if the federal claim survives summary judgment." Morgan v. City of Charlotte, No. 3:22-CV-00003-KDB-DCK, 2023 WL 4002524, at *16 (W.D.N.C. June 14, 2023) (quoting Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994)); Main, 2024 WL 871384, at *9 (observing "the jurisprudence governing Fourth Amendment excessive force actions also controls a party's actions for battery and gross negligence" and granting summary judgment for defendants on state law claims where court founds defendants were entitled to summary judgment on similar federal law claim); Heavner v. Burns, No. 5:21-CV-00159-KDB-DCK, 2022 WL 17477561, at *6 (W.D.N.C. Dec. 6, 2022) (same). The undersigned finds that Plaintiff's claim for excessive force does not survive the motion to dismiss stage, for this reason too, Plaintiff's claims for negligence, assault, and battery must be dismissed. Id.

in favor of the plaintiff." Seguro-Suarez ex rel. Connette v. Key Risk Ins. Co., 819 S.E.2d 741, 750 (N.C. Ct. App. Sept. 4, 2018) (quoting Turner v. Thomas, 794 S.E.2d 439, 444 (N.C. 2016)); Braswell v. Medina, 805 S.E.2d 498, 507 (N.C. Ct. App. 2017) (quoting Lopp v. Anderson, 795 S.E.2d 770, 780 (N.C. Ct. App. 2016)) (reversing lower court's dismissal of malicious prosecution claim where plaintiff "adequately alleged malice by pleading facts" that the Officers lacked probable cause). The Complaint sufficiently alleges a malicious prosecution claim because Plaintiff alleges Officer Scarborough initiated charges against Plaintiff and participated in later proceedings, allegedly without probable cause and by making false statements, which ended in Plaintiff's favor.

Because further development is needed to determine the facts surrounding Plaintiff's arrest and prosecution and whether probable cause existed to initiate and participate in prosecuting Plaintiff under N.C. Gen. Stat. § 14-223, the Court concludes that additional development is also required to determine if Plaintiff is entitled to public official immunity on his malicious prosecution claim. Hupp, 931 F.3d at 326 (reversing district court's grant of summary judgment on malicious prosecution claim based on immunity grounds under West Virginia law where questions of fact existed as to whether probable caused existed for plaintiff's arrest and prosecution).

For these reasons, the undersigned respectfully recommends granting Defendants' Motion to Dismiss Plaintiff's state law negligence, assault, battery, and false arrest/false imprisonment claims against Officer Scarborough and denying Defendants' Motion to Dismiss Plaintiff's state law malicious prosecution claim against Officer Scarborough. The undersigned concludes Officer Scarborough is entitled to public official immunity on all state law claims except his malicious prosecution claim. With respect to the state law malicious prosecution claim, the undersigned only

concludes that the issue of public official immunity is premature, and that the issue may be reraised, as appropriate, at a later stage of the litigation.

### 2. Town of Dallas - Governmental Immunity

The Town argues it is entitled to governmental immunity on all state law claims. "The 'common law doctrine of sovereign immunity' bars suits against the State unless it 'has consented or waived its immunity.'" Estate of Graham v. Lambert, 898 S.E.2d 888, 895 (N.C. 2024) (quoting State ex rel. Stein v. Kinston Charter Acad., 866 S.E.2d 647, 655 (N.C. 2021)). "Cities, counties, and other localities are 'recognizable units that collectively make up' the State and enjoy a slice of its sovereign power." Id. (quoting Dawes v. Nash Cnty., 584 S.E.2d 760, 762 (N.C. 2003)). "For that reason, a 'portion of the State's sovereign immunity' trickles down 'to local governments.'" Id. (quoting Wray v. City of Greensboro, 802 S.E.2d 894, 898 (N.C. 2017)). "Governmental immunity is that portion of the State's sovereign immunity which extends to local governments." Wray, 802 S.E.2d at 898. This "'more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.'" Providence Volunteer Fire Dep't v. Town of Weddington, 876 S.E.2d 453, 461-62 (N.C. 2022) (quoting Evans v. Hous. Auth. of City of Raleigh, 602 S.E.2d 668, 670 (N.C. 2004)). Thus, "North Carolina municipalities enjoy governmental immunity from state common-law tort claims arising out of their performance of governmental, as opposed to proprietary, functions." Evans v. Chalmers, 703 F.3d 636, 655 (4th Cir. 2012) (citing Patrick v. Wake Cnty. Dep't of Human Servs., 655 S.E.2d 920, 923 (N.C. Ct. App. 2008)). "[T]he provision of police services constitutes a governmental function protected by governmental immunity." Id. (citing Arrington v. Martinez, 716 S.E.2d 410, 414 (N.C. Ct. App. 2011)).

Governmental immunity is also "waivable by clear statutory language." Estate of Graham,

898 S.E.2d at 896 (citing Guthrie v. N.C. State Ports Auth., 299 S.E.2d 618, 625 (N.C. 1983)). "[T]he legislature has allowed cities [and counties] to waive 'immunity from civil liability in tort' by buying liability insurance." Id. (quoting N.C. Gen. Stat. § 160A-485(a)). ("Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance."); N.C. Gen. Stat. § 153A-435. "Well-established North Carolina law holds that courts may not lightly infer a waiver of immunity." Evans, 703 F.3d at 655 (citing Guthrie, 299 S.E.2d at 627. Governmental immunity is waived "only to the extent that the city or town is indemnified by the insurance contract from liability for the acts alleged." Id. (quoting Combs v. Town of Belhaven, 415 S.E.2d 91, 92 (N.C. Ct. App. 1992) (internal quotation marks omitted)).

Plaintiff brings various state law claims against the Town of Dallas for Officer Scarborough's actions. The Town is a municipality that is subject to governmental immunity from claims arising out of its performance of governmental functions. Plaintiff's Complaint alleges facts arising from police services provided by the Town, which is a governmental function generally covered by governmental immunity. Plaintiff alleges the Town waived its governmental immunity "from the state law tort claims in this case pursuant to G.S. § 160A-485, either by participation in a government risk pool or through the purchase of commercial insurance that will indemnify the Town and its agents for any judgment against it or its agents named in this action." (Doc. No. 13 ¶ 50).

Defendants argue that the Town did not waive governmental immunity for these claims because its insurance policy contains non-waiver of immunity provisions. (Doc. No. 18 at 6-8). Specifically, Defendants attached to their reply brief a General Liability/Professional Liability insurance policy listing the Town of Dallas as the insured, effective July 1, 2021, and point to a provision and condition stating that the Town did not waive governmental immunity through the

purchase of the policy.[5]  While such anti-waiver provisions may be enforceable, that does not end

the inquiry here.  The Court notes Defendant's reply brief attaching the insurance policy is not

accompanied by any affidavit or other document regarding its authenticity.  Evans, 703 F.3d at

655-56.  It also remains unclear whether the insurance policy provided is the Town's only

insurance policy.  Defendants also do not address the allegation in the Complaint that the Town

participates in a local government risk pool.  (Doc. No. 13 ¶ 50); N.C. Gen. Stat. § 160A-485(a)

("Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing

liability insurance. Participation in a local government risk pool pursuant to Article 23 of General

Statute Chapter 58 shall be deemed to be the purchase of insurance for the purposes of this

section."); McClure v. Charlotte-Mecklenburg Bd. Of Educ., No. 3:20-CV-00005-KDB-DCK,

2022 WL 317641, at *3-4 (W.D.N.C. Feb. 2, 2022) (considering affidavit submitted by school

board's insurance plan administrator to support governmental immunity argument and denying

motion to dismiss on governmental immunity grounds where factual issues existed regarding

insurance policy and court was required to construe all reasonable inferences from disputed facts

in favor of plaintiff's allegations); Simmons v. Corizon Health, Inc., 122 F. Supp. 3d 255, 272

(M.D.N.C. Aug. 4, 2015) ("Plaintiffs argue finally that they should be able to conduct 'at least

minimal discovery' to investigate the County's involvement in the risk pool.  But to do so, in light

of the County's affidavit, would deprive the County of the very immunity to which it is entitled.

---

[5] Governmental immunity is a jurisdictional defense and courts may consider affidavits and other materials for the limited purpose of considering a governmental immunity defense.  A.G. v. City of Statesville, No. 5:20-CV-00165-KDB-DCK, 2021 WL 2582577, at *1, 7 (W.D.N.C. June 23, 2021); Parris for D.P. v. Cleveland Cnty. Bd. Of Educ., No. 1:22-cv-00087-MR-WCM, 2022 WL 19406949, at *6-7 (W.D.N.C. Dec. 16, 2022), Mem. & R. Adopted, 2023 WL 2366977 (W.D.N.C. Mar. 6, 2023); McClure v. Charlotte-Mecklenburg Bd. Of Educ., No. 3:20-CV-00005-KDB-DCK, 2022 WL 317641, at *3-4 (W.D.N.C. Feb. 2, 2022).  "Although the court may consider affidavits submitted by both parties, factual disputes and all reasonable inferences must be made in favor of the party asserting jurisdiction." Evans v. Charlotte-Mecklenburg Bd. of Educ., No. 3:22-CV-257-MOC-DCK, 2023 WL 300592, at *2 (W.D.N.C. Jan. 18, 2023) (citing White v. Aetna Life Ins. Co., No. 3:20-CV-204-MOC-DSC, 2021 WL 467210, at *2 (W.D.N.C. Feb. 9, 2021)).

In the absence of some reason to question the County's affidavit, Plaintiffs' request for jurisdictional discovery is denied." (internal citations omitted); Parris for D.P., 2022 WL 19406949, at *6-9 (considering multiple affidavits submitted by school board in support of waiver of governmental immunity argument).

In short, Plaintiff has presented sufficient allegations at this stage, and Defendants have not presented all necessary information that the Town has, in fact, not waived governmental immunity. Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss Plaintiff's state law claims against the Town based on governmental immunity be denied without prejudice, to be re-raised at a later stage as appropriate.

### C. North Carolina Constitutional Claims

An individual may have a direct cause of action against a state official under the provisions of the North Carolina Constitution only when there is no adequate remedy provided by state law. Corum v. Univ. of N.C. Bd. of Governors, 413 S.E.2d 276, 290-91 (N.C. 1992); Davis v. Town of S. Pines, 449 S.E.2d 240, 247-48 (N.C. Ct. App. 1994). An adequate state remedy refers to the "possibility of relief," not that plaintiff prevails on those state law claims. Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 678 S.E.2d 351, 355-56 (N.C. 2009). "[T]he affirmative defense of public official immunity does not render common law tort claims inadequate." DeBaun v. Kuszaj, 767 S.E.2d 353, 357 (N.C. Ct. App. 2014).

As discussed above, Plaintiff has alleged numerous state law causes of action. He has an adequate remedy under state law. Hart for J.G. v. Union Cnty., No. 3:19-CV-00159-KDB-DCK, 2020 WL 710802, at *6 (W.D.N.C. Feb. 12, 2020). Consequently, the undersigned respectfully recommends granting Defendants' Motion to Dismiss Plaintiff's direct claims under the North Carolina Constitution.

### D. Official Capacity Claims

Plaintiff has captioned his claims against the Officer Scarborough in both his "official capacity" and "individual capacity," and has also named the Town as a Defendant. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Main, 2024 WL 871384, at *4 (quoting Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)). To the extent he asserts "official capacity" claims, these official capacity claims are redundant and should be dismissed. Accordingly, the undersigned recommends granting Defendants' Motion to Dismiss the official capacity claims. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006).

## IV.    RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion to Dismiss Plaintiff's Complaint in Lieu of an Answer" (Doc. No. 14) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned respectfully recommends as follows:

1. Defendants' Motion to Dismiss Plaintiff's First Amendment claim and Fourth Amendment excessive force claim against Officer Scarborough individually be **GRANTED**;

2. Defendants' Motion to Dismiss Plaintiff's Fourth Amendment false arrest and Fourth Amendment malicious prosecution claims against Officer Scarborough individually be **DENIED** without prejudice to be re-raised at a later stage in this litigation as appropriate;

3. Defendants' Motion to Dismiss Plaintiff's constitutional claims against the Town be **GRANTED**;

4. Defendants' Motion to Dismiss Plaintiff's state law claims against Officer Scarborough individually be **GRANTED** as to all state law claims except the malicious prosecution

claim, and **DENIED** without prejudice to be re-raised at a later stage in this litigation as appropriate as to the malicious prosecution state law claim;

5. Defendants' Motion to Dismiss Plaintiff's state law claims against the Town be **DENIED** without prejudice to be re-raised as appropriate;

6. Defendants' Motion to Dismiss Plaintiff's direct claims under the North Carolina Constitution be **GRANTED**; and

7. Defendants' Motion to Dismiss Plaintiff's claims against the Officer Scarborough in his official capacity be **GRANTED**.

## V. <u>TIME FOR OBJECTIONS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u> "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED**.

Signed: August 12, 2024

Susan C. Rodriguez
United States Magistrate Judge